Slip Op. 17-86

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **HEBEI GOLDEN BIRD TRADING CO., LTD., JINXIANG RICHFAR FRUITS & VEGETABLES CO., LTD., QINGDAO LIANGHE INTERNATIONAL TRADE CO., LTD., SHANDONG CHENHE INTERNATIONAL TRADING CO., LTD., and WEIFANG HONGQIAO INTERNATIONAL LOGISTICS CO., LTD.,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant,<br><br>**FRESH GARLIC PRODUCERS ASSOCIATION, CHRISTOPHER RANCH, L.L.C., THE GARLIC COMPANY, VALLEY GARLIC, and VESSEY AND COMPANY, INC.,**<br><br>Defendant-Intervenors. | **Before: Jane A. Restani, Judge**<br><br>**Court No. 15-00182** |

## OPINION

[Commerce's results of redetermination in antidumping periodic review are sustained.]

Dated: July 17, 2017

Robert T. Hume, Hume & Associates, LLC, of El Prado, NM, for plaintiffs.

Emma E. Bond, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel on the brief was Khalil N. Gharbieh, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Court No. 15-00182                                                        Page 2

    Michael J. Coursey, John M. Herrmann, II, and Joshua R. Morey, Kelley Drye & Warren, LLP, of Washington, DC, for defendant-intervenors.

    Restani, Judge:  Before the court is the U.S. Department of Commerce ("Commerce")'s Final Redetermination Pursuant to Court Remand Order, ECF No. 74-1 ("Remand Results")[1] concerning the nineteenth periodic administrative review of the antidumping ("AD") duty order on fresh garlic from the People's Republic of China ("PRC").  See Antidumping Duty Order: Fresh Garlic from the People's Republic of China, 59 Fed. Reg. 59,209 (Dep't Commerce Nov. 16, 1994).  The court previously remanded to Commerce the issue of whether mandatory respondent Hebei Golden Bird Trading Co., Ltd. ("Golden Bird") is eligible for a separate rate. Shenzhen Xinboda Industrial Co. v. United States, 180 F. Supp. 3d 1305, 1324 (CIT 2016) ("Xinboda").  For the reasons stated below, Commerce's Remand Results finding Golden Bird is not entitled to separate rate status are sustained.

<h1 style="text-align:center">BACKGROUND</h1>

    The court presumes familiarity with the facts of the case as discussed in Xinboda, 180 F. Supp. 3d at 1308–12.  For convenience, the facts relevant to this stage of the proceeding are summarized here.  Following contestation by the parties of Commerce's original results, the court remanded the case to Commerce.  Id. at 1324; see also Fresh Garlic from the People's Republic of China:  Final Results and Partial Rescission of the 19th Antidumping Duty Administrative Review; 2012-2013, 80 Fed. Reg. 34,141 (Dep't Commerce June 15, 2015)

---

[1] Although Commerce issued its Remand Results in consolidated court number 15-00179, the consolidated action has since been severed, with the issues in each complaint being considered separately.  See Order, July 12, 2017, ECF No. 85.  Accordingly, all electronic case filing ("ECF") numbers refer to docket for consolidated court number 15-00179, unless otherwise indicated.

("Final Results").  The court ruled that Commerce's decision that Golden Bird lacked

independence from government control such that it was not entitled to a separate rate was

unsupported by substantial evidence.  Xinboda, 180 F. Supp. 3d at 1315–17.

In its Final Results, Commerce disregarded Golden Bird's separate rate information and

applied the PRC-wide rate to Golden Bird as a total adverse facts available ("AFA") rate[2]

because it found that Golden Bird's questionnaire responses were not credible due to its failure

to cooperate in providing certain Chinese Export Declaration Forms ("export declarations") and

China Inspection Quality Bureau inspection certificates ("Phyto-sanitary certificates") requested

by Commerce.  Id. at 1311.  The court sustained Commerce's application of total AFA because

Golden Bird failed to act to the best of its ability by not furnishing the export declarations, which

Golden Bird was required to maintain under Chinese law and were necessary for Commerce to

substantiate Golden Bird's export volume.  Id. at 1314–15.  But, in reasoning that a

determination of separate rate status is a distinct inquiry from application of total AFA, the court

held that Commerce's treatment of Golden Bird as part of a PRC-wide entity due to its

determination regarding the unreliability of Golden Bird's sales data was not supported by

substantial evidence.  Id. at 1316–17.  The court noted that a mere finding that sales data is

"unreliable" did not justify a wholesale rejection of Golden Bird's submissions where

---

[2] Although not defined by statute, the term "total AFA" refers to Commerce's use of the facts otherwise available provision and the adverse inferences provision of 19 U.S.C. § 1677e to arrive at a total replacement margin.  Commerce can use "facts otherwise available" in reaching an AD duty determination when necessary information is not available, or when an interested party withholds or fails to timely submit requested information or significantly impedes a proceeding. 19 U.S.C. § 1677e(a).  Pursuant to 19 U.S.C. § 1677e(b)(1)(A), if Commerce finds that a party "has failed to cooperate by not acting to the best of its ability" to comply with its request for information, Commerce may reach its determination by using "an inference that is adverse to the interests of that party in selecting from among the facts otherwise available."

"extraordinary findings of bad faith and fraud . . . were not made." Id. at 1317 n.12.  Although

the court declined to decide how a finding of bad faith or fraud might impact the case, it stated

that if Commerce "made an explicit finding that Golden Bird was engaged in . . . export

funneling activities . . . based on record evidence" the finding "likely could be considered in

selecting a total AFA rate for Golden Bird." Id. at 1317 nn.12–13.  Were Commerce to make

such a finding, the court noted "it may be appropriate . . . for Commerce to select a separate rate

incorporating the PRC-wide rate, to deter this type of non-compliance." Id. at 1317 n.13.  The

court, however, did not preclude Commerce from denying Golden Bird separate rate status.

Rather, it remanded the matter to Commerce to reconsider Golden Bird's eligibility for a

separate rate, and ordered that Commerce, as it had previously, "may not rely on a finding of

unreliable sales data." Id. at 1324.  More was required.

Upon remand, Commerce reconsidered Golden Bird's eligibility for a separate rate and

determined that it remains ineligible. Remand Results at 1.  In its remand proceedings,

Commerce reopened the record of the nineteenth administrative review to consider further

evidence submitted in the twenty-first review of the same AD order by Zhengzhou Harmoni

Spice Co., Ltd. ("Harmoni") regarding alleged duty evasion by Golden Bird, and it allowed

interested parties to submit information and comments. Id. at 9; Placing Docs. on the R. of the

Nineteenth Antidumping Duty Administrative Review of Fresh Garlic from the People's

Republic of China at 1–2, PD 1 (Dec. 20, 2016) ("Doc. Placement Mem.").  Harmoni's letter

alleged that Golden Bird engaged in an extensive export funneling scheme from the seventeenth

through the nineteenth periods of review ("PORs") and misrepresented the nature of its

ownership to Commerce. Remand Results at 10.  Harmoni attached to the letter a sworn

declaration and associated evidence from the owner of a U.S. garlic distributor that claimed to

purchase garlic from Golden Bird from 2010 to 2012 at a zero or near-zero rate.  Id. at 10, 12;

Doc. Placing Mem. at Attachs. 1–2 (hereinafter "Harmoni Fraud Allegation").  Commerce also

explicitly considered the Fresh Garlic Producers Association ("FGPA")'s submission of General

Administration of Customs of the PRC ("GACC") data, already on the record of this nineteenth

POR, which shows a significant discrepancy between what Golden Bird reported to GACC and

to U.S. Customs and Border Protection ("Customs") during the seventeenth through the

nineteenth PORs.  Remand Results at 3–4, 18–21.

        After reviewing comments in response to the Harmoni Fraud Allegation, Commerce

concluded that Golden Bird engaged in an extensive AD duty evasion scheme, in which it acted

as a "service agent" for other Chinese companies subject to the PRC-wide rate to claim Golden

Bird's lower rate.  Id. at 1.  Commerce relied on a substantial divergence in export and import

volume, as evidenced by the GACC export quantity and Customs import quantity data, to

support the conclusion that Golden Bird was apparently funneling the exports of other Chinese

exporters.  Id. at 3–4, 18–21.  Commerce determined that "approximately sixty percent of all

entries during the period of review were exported by companies subject to the PRC-wide cash

deposit rate, but entered at a much lower rate or zero rate, including Golden Bird's."  Id. at 1.

Commerce noted that Golden Bird was still unable to provide more than a fraction of the export

declarations and Phyto-sanitary certificates Commerce requested to determine whether Golden

Bird was the exporter and that Golden Bird offered no explanation for the discrepancy in the

GACC and Customs data.  Id. at 4–5, 17.  Citing the Harmoni Fraud Allegation and declaration

that Commerce partially corroborated,[3] Commerce determined that Golden Bird misrepresented

its export volume and the nature of its ownership and operations to Commerce in bad faith and

perpetrated fraud on the proceeding.  Id. at 21, 24.  Commerce noted that the record evidence

suggested that Golden Bird misrepresented matters relating to corporate control during the POR,

but Commerce stated it was unable to corroborate all aspects of the allegations due to resource

constraints and "therefore, [did] not draw[] specific conclusions" as to corporate control.  Id. at

21, 25–26.[4]  Commerce, however, did reason that it was unable to determine which entities

controlled specific exports because a majority of Golden Bird's purported exports were actually

those of other Chinese exporters subject to the PRC-wide rate.  Id. at 25–26.  Commerce thus

explained that Golden Bird's misrepresentations were pervasive, which it states justifies its

rejection of Golden Bird's separate rate submissions as unreliable and incomplete, its finding that

Golden Bird failed to cooperate, and its determination that Golden Bird was part of the PRC-

wide entity.  Id. at 1–2, 19, 24–25.

        Golden Bird challenges Commerce's finding that it engaged in fraud and the consequent

application of the PRC-wide rate because it alleges Commerce improperly considered unreliable

---

[3] Commerce noted in its Remand Results that its analysis of the declarant's testimony and
documents rely "only on . . . specific, corroborated information."  Remand Results at 34.
Commerce states that it verified specific, proprietary information provided by the declarant by
comparing it to information obtained by Customs.  Id. at 21, 24–25.

[4] Commerce suggested, but did not conclude, that Golden Bird was owned by Messrs. Bai and
Wang during the POR, and that therefore Golden Bird misrepresented its ownership to
Commerce.  Remand Results at 10–11, 21.  Such a finding implicating corporate ownership and
control would have gone to the heart of separate rate eligibility.  Commerce nonetheless relied on
substantial evidence to support its determination that Golden Bird is ineligible for a separate rate
because the evidence shows that Golden Bird likely funneled the exports of companies subject to
the PRC-wide rate, as explained infra.

and biased evidence, specifically the Harmoni Fraud Allegation and the supporting declaration,

even though those documents were originally submitted on the record of a different review.

Cmts. on Commerce Department's Final Results of Redetermination Pursuant to Remand 12–13,

ECF No. 77 ("Golden Bird Cmts.").  Golden Bird also argues that Commerce infringed on its

Fifth Amendment due process rights and abused the discretion applicable to the administrative

protective order ("APO") in this case when it denied Golden Bird access to and sufficient

opportunity to respond to portions of the new information because Commerce improperly double

bracketed[5] certain information and accepted hearsay statements made in the supporting

declaration.  Id. at 13–17.  Golden Bird requests that the court remand to Commerce with

instructions either to allow it a full opportunity to review the double-bracketed information and

respond, or, alternatively, to remove the Harmoni Fraud Allegation from the record.[6]  Id. at 1–2,

---

[5] Pursuant to 19 C.F.R. § 351.304(b)(2), parties may identify information in submissions to
Commerce as non-releasable even under an APO by identifying such information within double
brackets, rather than single brackets, if there is a "clear and compelling need" to withhold the
information.

[6] In addition, Golden Bird asks the court to take judicial notice of a separate district court case in
which Harmoni unsuccessfully brought several claims against other Chinese exporters, including
allegations of fraud using undisclosed declarants.  Golden Bird Cmts. at 5; see also id. at Exs. 5–
7.  It also submits various exhibits not on the administrative record that are related to court and
administrative filings and decisions concerning other reviews of the AD order on fresh garlic
from the PRC.  See id. at Exs. 10–11, 13–15.  The government and FGPA request that the court
strike Golden Bird's Exhibits 5–7, 10–11, and 13–15 because they were not submitted on the
administrative record of this review.  Def.'s Resp. to Cmts. Regarding Remand Redetermination
& Mot. to Strike Extra-Record Exs. 9–13, ECF No. 82 ("Gov't Resp."); Def. Intrvnrs.' Resp. to
Cmts. on Remand Results 1, 4–6, ECF No. 84 ("FGPA Resp.").

   Federal Rule of Evidence 201 states that the court, after a request from a party, must take
judicial notice of an adjudicative fact that is "generally known" or that "can be accurately and
readily determined from sources whose accuracy cannot reasonably be questioned."  See also 28
U.S.C. § 2641(a) ("[T]he Federal Rules of Evidence shall apply to all civil actions in the Court of

(continued . . .)

12–13.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012).  The court will sustain

Commerce's determination in an administrative review unless it is "unsupported by substantial

evidence on the record, or otherwise not in accordance with law."  19 U.S.C.

§ 1581a(b)(1)(B)(i).

## DISCUSSION

### I.    Consideration of the Harmoni Fraud Allegation

Commerce generally has the inherent authority to reopen the record of an administrative

AD duty review and reconsider its decision, subject to certain limitations not applicable here.

Tokyo Kikai Seisakusho, Ltd. v. United States, 529 F.3d 1352, 1360 (Fed. Cir. 2008).

Commerce may exercise its authority to reopen in certain situations, such as when "newly

revealed information 'raised questions' about the original proceedings," "after-discovered fraud

'is alleged,'" or "Commerce wishes 'to consider' new allegations."  Ad Hoc Shrimp Trade

Action Comm. v. United States, 882 F. Supp. 2d 1377, 1380 (CIT 2013) (first quoting Tokyo

Kikai, 529 F.3d at 1360–61; then quoting Home Prods. Int'l, Inc. v. United States, 633 F.3d

1369, 1377 (Fed. Cir. 2011)).  This power to reopen and reconsider is especially important when

Commerce seeks "to protect the integrity of its own proceedings from fraud."  Tokyo Kikai, 529

F.3d at 1361; see also US Magnesium LLC v. United States, 895 F. Supp. 2d 1319, 1325 (CIT

International Trade."); Murakami v. United States, 398 F.3d 1342, 1355 (Fed. Cir. 2005).
Golden Bird's request for judicial notice is not specific to which adjudicative facts in the eight
exhibits provided Golden Bird would like the court to notice.  Instead, Golden Bird's request
appears to be an improper attempt to supplement the record, and, accordingly, the court grants
the government's request to strike the exhibits for their factual content.

2013).

     Commerce acted within the bounds of its discretion in considering evidence of fraud initially placed on the record of the present remand proceedings from the twenty-first review. Harmoni's allegations were first filed after the underlying Final Results in this case had been published.  Remand Results at 9–10.  Here, Commerce rightly considered the new prima facie evidence that Golden Bird engaged in an extensive fraudulent scheme that impeached the reliability of its separate rate submissions, placed the allegations on the remand record of the present review, and then offered Golden Bird the opportunity to rebut those allegations.[7]  Id. at 1–2, 28; see also 19 C.F.R. § 351.301(c)(4) ("[Commerce] may place factual information on the record of the proceeding at any time.  An interested party is permitted one opportunity to correct factual information placed on the record of the proceeding by [Commerce] . . . .").  Indeed, Commerce exercised its authority to reconsider the Final Results "to protect the integrity of its own proceedings from fraud," a situation in which Commerce's "power to reconsider is even more fundamental."  Tokyo Kikai, 529 F.3d at 1361.  In addition, Commerce properly adhered to the scope of the court's remand, recognizing that the court stated that Commerce could make an explicit finding that Golden Bird engaged in fraud and that such a determination might bear on any decision to disregard Golden Bird's separate rate submissions.  Remand Results at 9, 35; Xinboda, 180 F. Supp. 3d at 1317 n.13.  Thus, Golden Bird's argument that it was improper for

---

[7] Golden Bird takes issue with Commerce's statement that Golden Bird had been aware of the Harmoni Fraud Allegation since the time it was filed on the record of the twenty-first administrative review, arguing that it was not a party to that review.  Golden Bird Cmts. at 12. Regardless of when Golden Bird learned of the allegations, Commerce correctly noted that Golden Bird had two opportunities to substantively respond to the evidence in the remand proceedings of this review but failed to take advantage of that opportunity, leaving the allegations nearly entirely unrebutted.  Remand Results at 29.

Commerce to place and consider evidence submitted in the twenty-first review on the record of

the nineteenth review does not carry the day.  See Golden Bird Cmts. at 12–13.

Furthermore, Commerce's determination that Golden Bird engaged in fraud and its

subsequent assignment of the PRC-wide rate is supported by substantial evidence.  Commerce

stated that it relied on only corroborated information from the Harmoni Fraud Allegation and

reasoned that the fact that the declaration was sworn under penalty of perjury supported the

declaration's reliability.  Remand Results at 10, 34.  Its corroboration of the Harmoni Fraud

Allegation and declaration included verifying "specific and proprietary shipment details provided

by the declarant," such as bill of lading numbers, shipping dates, quantities, and container

numbers, with information obtained from Customs.  Id. at 13–14, 21, 23–25; see also Def.'s

Resp. to Cmts. Regarding Remand Redetermination & Mot. to Strike Extra-Record Exs. 19–21,

ECF No. 82 ("Gov't Resp.").  Commerce also corroborated the Harmoni Fraud Allegation with

the significant and unrebutted discrepancies in the GACC and Customs data, which suggested

that Golden Bird fraudulently funneled the exports of other Chinese exporters subject to the

PRC-wide rate, resulting in $141.6 million in evaded AD cash deposits from the seventeenth

through nineteenth PORs.  Remand Results at 10, 18; see Ad Hoc Shrimp Trade Action Comm.

v. United States, 925 F. Supp. 2d 1315, 1321–23 (CIT 2013) (denying respondent separate rate

status because respondent's withholding and misrepresentation of its corporate structure and

affiliations which Commerce corroborated with public registration documents impugned the

credibility of its separate rate submissions).  Based on this evidence, Commerce concluded that,

at minimum, more than half of Golden Bird's exports were actually controlled by companies not

found to be independent of the PRC-wide entity, that it would be impossible to determine which

exports it did control, and that its separate rate submission is therefore substantially incomplete.

See Remand Results at 19–20, 25–26.  Because Commerce found that most of Golden Bird's

exports are actually controlled by companies that received the PRC-wide rate and estimated its

funneling activities to involve at minimum about one-third of the total export volume from

companies subject to the PRC-wide rate, its determination that Golden Bird is ineligible for a

separate rate is both reasonable and supported as many of Golden Bird's alleged exports were

apparently actually controlled by PRC entities.  Id. at 19–20.  Commerce provided Golden Bird

two opportunities to rebut the Harmoni Fraud Allegation and the GACC data discrepancy, but

Golden Bird provided no substantive comments during the remand proceedings.  Id. at 29.

Consequently, Golden Bird's bare assertions that the Harmoni Fraud Allegation is unreliable fail

because, again, Golden Bird has not challenged Commerce's specific corroboration of the

detailed allegations on which Commerce relies.

      Commerce complied with the court's remand instructions to reevaluate Golden Bird's

eligibility for a separate rate, making an explicit finding of fraud based on substantial evidence

that it lawfully considered.  Because Commerce's finding of fraud impugned Golden Bird's

separate rate submissions, such as ownership and control over its export activities, Commerce's

determination that Golden Bird is ineligible for a separate rate was supported by substantial

evidence.  See id. at 10, 21, 25–26.

## II.    Procedural Due Process and Access to Proprietary Information

      "[A]n importer may be entitled to procedural due process regarding the resolution of

disputed facts involved in a case of foreign commerce when the importer faces a deprivation of

'life, liberty, or property' by the Federal Government."  NEC Corp. v. United States, 151 F.3d

1361, 1370 (Fed. Cir. 1998); see U.S. Const. amend. V; Buttfield v. Stranahan, 192 U.S. 470,

492–93 (1904).  When such deprivation occurs, the Constitution guarantees the right to be heard.

NEC Corp., 151 F.3d at 1370.

　　　　Furthermore, by statute, Commerce is barred from disclosing proprietary information it

receives without the consent of the party that submitted the information.  19 U.S.C.

§ 1677f(b)(1)(A).  A party may submit proprietary information either in single brackets, which is

then disclosed to interested parties under an APO, or in double brackets, which may not be

released under an APO.  See Carpenter Tech. Corp. v. United States, 34 CIT 1482, 1485 (2010);

see also 19 C.F.R. § 351.304(b)(2).  Commerce may lawfully withhold specific information in

proceedings from interested parties under an APO, i.e., double-bracketed information, when

there is a "clear and compelling need" in situations in which "substantial and irreparable

financial or physical harm may result from disclosure."  Allied Tube & Conduit Corp. v. United

States, 898 F.2d 780, 786 (Fed. Cir. 1990) (quoting H.R. Conf. Rep. No. 100–576, 100th Cong.

2nd Sess. 623 (1988), reprinted in 1988 U.S. Code Cong. & Admin. News 1656); see 19 U.S.C.

§ 1677f(c)(1)(A).

　　　　Golden Bird's generalized procedural due process allegations fail.  Golden Bird merely

concludes that Commerce deprived it of "life, liberty, or property" in denying it access to

"statements that specifically referred to [Golden Bird]" without ever specifically identifying any

such deprivation.  Golden Bird Cmts. at 14.  Although Golden Bird claims that the allegations

are criminal in nature and that Commerce's finding of fraud might impact a separate Racketeer

Influenced and Corrupt Organization Act ("RICO") case filed in a California district court,

Golden Bird fails to identify how or why Commerce denied it due process of law in the civil

administrative proceedings at issue, which are subject to different standards and principles of

judicial review.  See Max Fortune Indus. Ltd. v. United States, 853 F. Supp. 2d 1258, 1266 (CIT

2012) ("[Plaintiff] cites to no statutory or regulatory authority to support its proposition that it

has a 'right to confront its accuser,' and this Court declines [plaintiff's] plea to read such a right

into an administrative proceeding." (internal citation omitted)).  Instead, the court will construe

Golden Bird's constitutional due process challenges as claims that Commerce violated the

governing statute by failing to disclose certain proprietary information to Golden Bird so that

Golden Bird could have a meaningful opportunity to contest the allegations.

Commerce's decision to protect the identity of the declarant was reasonable and

comported with Commerce's obligations pursuant to the statute and its regulations.  As the

double-bracketed information was limited to the identifying information of the declarant, it does

not constitute withholding of "wholesale allegations" such that the bracketing might violate

Golden Bird's right to meaningfully comment.  See Carpenter Tech. Corp., 34 CIT at 1486.  The

general allegations and structure of the fraud were made public, and Golden Bird's counsel had

access to much of the substantive information pertaining to the fraud scheme that was designated

as releasable under the APO.  Remand Results at 33.  Commerce reasonably explained that it

double bracketed the declarant's identifying information and kept certain statements confidential

based on the declaration's "highly damaging allegations" relating to a large number of Chinese

exporters, Harmoni's claim that the safety of the declarant and the safety of its family in China

were in danger, the extortion attempt referenced in the Harmoni Fraud Allegation, and the filing

of the separate RICO action.  Id. at 11, 32–33; see also Max Fortune, 853 F. Supp. 2d at 1266

(upholding Commerce's decision to double bracket identifying information of a researcher

because disclosing its identity "could prove a danger to the researcher and the researcher's

methods of obtaining information in the future.").  Golden Bird's assurances to its counsel that

"no threats had been made" to the declarant do not call into question Commerce's reasoning

regarding the need to protect the declarant, <u>see</u> Golden Bird Cmts. at 14, as these off-the-record

assurances cannot be verified, are neither specific nor meaningful given that Golden Bird claims

it does not know the identity of the declarant, and otherwise do not challenge Commerce's

reasoned explanation as unsupported by substantial evidence.

    In addition, Golden Bird has not squarely addressed why the identity of the declarant is

necessary for it to rebut the claims.  As Commerce points out, rebutting proprietary information

is routine, and counsel could have worked with Golden Bird to formulate a path to rebuttal

without disclosing any proprietary information.  <u>Remand Results</u> at 33; <u>see</u> <u>Max Fortune</u>, 853 F.

Supp. 2d at 1265–67.  And, Commerce, rather than basing its decision on the double-bracketed

information, relied on corroborated information from the Harmoni Fraud Allegation and the

unrebutted data from GACC and Customs.[8]  <u>Remand Results</u> at 32, 34–35.  Golden Bird's

speculation about the undisclosed declarant's lack of credibility and its assertion that the sworn

nature of its testimony do not ensure its reliability are insufficient to rebut the record evidence

relied upon by Commerce.  <u>See</u> Golden Bird Cmts. at 10–11; <u>Remand Results</u> at 34.  Thus,

Commerce's decision to designate certain identifying information of the undisclosed declarant

under an APO was not arbitrary, and Commerce did not infringe on Golden Bird's Fifth

---

[8] Golden Bird, however, contends that Commerce improperly relied upon a hearsay statement.
Golden Bird Cmts. at 14.  But, the alleged hearsay statement Golden Bird points to relates to
whether or not Messrs. Bai and Wang owned Golden Bird, and Commerce specifically stated
that it did not make a finding of whether Messrs. Bai and Wang controlled Golden Bird and,
therefore, did not rely on any such hearsay statement.  <u>See</u> <u>Remand Results</u> at 10–11, 21.

Amendment right to procedural due process.

## CONCLUSION

For the reasons stated above, Commerce's determinations regarding Golden Bird in the

Remand Results are sustained.  Judgment will enter accordingly.


Dated: July 17, 2017                              ___/s/ Jane A. Restani_____
          New York, New York                              Jane A. Restani
                                                                 Judge